UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

IN RE: MIKE HOOKS L L C                    CASE NO.  2:20-CV-00691

                                           JUDGE JAMES D. CAIN, JR.

                                           MAGISTRATE JUDGE LEBLANC

<u>MEMORANDUM RULING</u>

Before the court is a Motion to Dismiss [doc. 66] filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by claimant Conrad Shipyard LLC ("Conrad"), relating to the third-party complaint [doc. 63] filed by Mike Hooks LLC ("MHL"). MHL opposes the motion. Doc. 69.

## I.
### BACKGROUND

This suit arises from injuries allegedly suffered by claimant David Lavan on April 29, 2020, during a flash fire in his cabin on the dredge vessel MIKE HOOKS. Doc. 1, ¶ 5. MHL, owner of the MIKE HOOKS, filed a Complaint for Exoneration from or Limitation of Liability in this court on June 1, 2020, seeking to limit its liability arising out of the incident pursuant to 46 U.S.C. § 30501 *et seq*. Doc. 1. The court issued a monition order, requiring that any claims be filed by December 15, 2020. Doc. 7. Lavan was the only claimant to appear within that time. Doc. 19. Pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the

court then issued a clerk's entry of default as to all unknown claimants in January 2021. Doc. 36.

The following month, the court granted Lavan's motion to (1) dismiss MHL's claim for declaratory judgment on his right to maintenance and cure and (2) partially lift the stay on his state court suit imposed by the limitation action, subject to certain stipulations. Doc. 37. Accordingly, Lavan filed suit against MHL in the Fourteenth Judicial District, Calcasieu Parish, Louisiana. In the state court suit MHL was granted leave to file a third-party demand against Conrad and Conrad was served with same on March 18, 2024. Doc. 57, att. 2. Accordingly, the undersigned enlarged the claims period in this matter for the purpose of allowing MHL to file a third-party complaint and Rule 14(C) tender against Conrad. Doc. 62. The court also reimposed the stay on state court litigation. *Id.*

In the third-party complaint MHL alleges:

> From November 12, 2019, to February 4, 2020, Conrad supplied materials, provided services, and/or performed work on the Vessel's keyway walkway and/or other locations on the Vessel. Upon information and belief, Conrad's materials, services, and/or work on the Vessel allegedly resulted in the Vessel's degasser system not properly ventilating as it had in the sixty-plus (60+) years that the Vessel was in service before Conrad's repairs, which . . . caused a flash fire aboard the Vessel when [Lavan] negligently and in breach of his duties aboard the Vessel lit [a] cigarette in the confined space of his bathroom that explicitly had a "NO SMOKING" [sign] posted in it in clear sight.

Doc. 63, ¶ 10. Accordingly, MHL brings claims for breach of contract; breach of warranty; and defense, indemnity, and hold harmless rights against Conrad. *Id.* at ¶¶ 11– 16.

Conrad now moves to dismiss the contractual claim for defense, indemnity, and hold harmless rights ("DIHH"), arguing that the 2003 Master Service Agreement ("2003 MSA")

on which these claims are based is inapplicable to Conrad's work on the MIKE HOOKS. Doc. 66. MHL opposes the motion. Doc. 69.

## II.
## LAW & APPLICATION

### A. Legal Standard

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

B. **Application**

MHL asserts causes of action against Conrad for contractual DIHH, quoting from the indemnity provisions in Article IX of the 2003 MSA. Conrad moves to dismiss this claim, arguing that the terms do not apply to the claims asserted by Lavan against MHL.

"When interpreting an indemnity provision, the Court applies the rules governing contract interpretation while strictly construing the indemnity provision in favor of the indemnitor." *Fieldwood Energy Offshore LLC v. Prime Offshore LLC*, 2019 WL 13096494, at *2 (S.D. Tex. Apr. 4, 2019) (cleaned up). While admiralty principles generally govern maritime contracts, state contract law may also be applied to the interpretation of such contracts if it is not inconsistent. *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 459 (5th Cir. 1995). Under either Louisiana law or general maritime law, a court may only look beyond the four corners of a contract if the contract is ambiguous. *Atel Mar. Invs., LP v. Sea Mar Mgmt., LLC*, 2012 WL 3109385, at *2 (E.D. La. Jul. 24, 2012). Under maritime law, a contract of indemnity:

> should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses which are neither expressly in its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Sanchez v. Am. Pollution Contr. Corp.*, 566 F.Supp.3d 549, 558 (E.D. La. 2021) (quoting *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)). Accordingly, if the terms of the indemnity agreement expressly provide for coverage, it must be enforced without further analysis of the parties' intent. *See id.* ("Here, because the language of the indemnity clause is clear and unambiguous . . . the indemnity clause in the BP/USES

Contract releases, protects, defends, indemnifies, and holds harmless BP from and against the personal injury claim brought by Sanchez.").

The 2003 MSA, which contains the applicable indemnity agreement, is a contract between "Customer" (MHL) and "Shipyard" (Conrad). It begins with the following recitals:

> **WITNESSETH:**
> WHEREAS, Customer wishes to be allowed access to Shipyard's premises (hereinafter referred to as the "Premises") and to be allowed while on the Premises to perform work, either directly with its own employees or indirectly through contractors and subcontractors employed by Customer (other than Shipyard) (collectively, "Customer's Contractors") on its vessel(s) located at the Premises; and
> WHEREAS, Customer acknowledges that Shipyard has the right to restrict access to the Premises; and
> WHEREAS, Shipyard desires to accommodate its customers and contractors by permitting them to contract/subcontract directly with other contractors and subcontractors for the purposes of their rendering services directly to Shipyard's customers and contractors; and
> WHEREAS, in consideration of Shipyard allowing the undersigned Customer to enter the Premises and to perform work, either directly with its own employees or indirectly through Customer's Contractors, on its vessel(s) located at the Premises, the undersigned Customer agrees to procure insurance naming Shipyard as an additional insured with a waiver of subrogation, to defend and indemnify the Shipyard, and to undertake the responsibilities and duties, all as more particularly set forth herein;
> NOW, THEREFORE, in consideration of the Shipyard allowing the undersigned Customer to access the Premises and allowing the Customer to perform work, either directly with its own employees or indirectly through Customer's Contractors, on its vessel located at the Premises, Shipyard and Customer hereby mutually agree as follows . . . .

Doc. 66, att. 2, p. 1. As to DIHH, the MSA provides:

> **ARTICLE IX**
> Customer agrees to indemnify, defend, and hold harmless Shipyard, its partners, officers, agents, employees, officers, subsidiaries, affiliates, interrelated companies, subcontractors, indemnities, successors, assigns, contractors, and subcontractors (hereinafter referred to as "Shipyard Group")

against any and all liability, claims, demands . . . of every kind and character and the costs there of . . . for damages to persons and/or property . . . which may be brought against Shipyard Group **and which are alleged to arise out of, be incident to, arise in connection with, or result from the activities of, work performed by, services rendered by, or materials furnished by Customer, Customer's Contractors, their respective employees, agents or subcontractors, or any sub-sub contractor's employees or agents. Customer agrees to defend and indemnify Shipyard Group whether the** suit or claims are occasioned, brought about, or caused in whole or in part by the negligence of Shipyard Group, or by any defect in the property or unseaworthiness of any vessel moored or drydocked on or adjacent to the Premises, regardless of whether such negligence, defect, or unseaworthiness be active or passive, primary or secondary or exist at the time of this Agreement or arises later. Customer also agrees to indemnify the Shipyard Group for all costs, expenses and attorneys fees expended by Shipyard Group in the enforcement of this Agreement.

  **Shipyard agrees to indemnify, defend and hold harmless Customer**, Customer's Contractors and their partners, officers, agents, employees, parent companies, subsidiaries, affiliates, interrelated companies, indemnities, successors, assigns, contractors, and subcontractors (hereinafter "Contractor/Subcontractor Group") against any and all liability, claims, demands . . . of every kind and character and the costs there of . . . for damages to persons and/or property . . . **which may be brought against Contractor/Subcontractor Group and which are alleged to arise out of, be incident to, arise in connection with, or result from the activities of, work performed by, services rendered by, or materials furnished by Shipyard, its employees, or agents.** Shipyard agrees to defend and indemnify Contractor/Subcontractor Group whether the suit or claims are occasioned, brought about, or caused in whole or in part by the negligence of Contractor/Subcontractor Group, or by any defect in the property or unseaworthiness of any vessel moored or drydocked on or adjacent to the Premises, regardless of whether such negligence, defect, or unseaworthiness be active or passive, primary or secondary or exist at the time of this Agreement or arises later. Shipyard also agrees to indemnify Contractor/Subcontractor Group for all costs, expenses and attorney fees expended by Contractor/Subcontractor Group in the enforcement of this Agreement. The provisions of this Article shall survive any termination or expiration of this Agreement and completion of Contractor/Subcontractor's work on the Premises. The provisions of this Article shall survive any termination or expiration of this Agreement and completion of Customer's or Customer's Contractors' work on the Premises.

*Id.* at 4–5 (emphasis added).

As demonstrated in the recitals, the purpose of the MSA concerns access to MHL vessels located at Conrad's premises. Doc. 66, att. 2, p. 1. But, as MHL points out, the recitals do not exclude or otherwise restrict Conrad from working on MHL's vessels. The second half of Article IX also provides that Conrad will indemnify, defend, and hold harmless MHL against claims "which are alleged to arise out of, be incident to, arise in connection with, or result **from the activities of, work performed by, services rendered by, or materials furnished by Shipyard [Conrad], its employees, or agents.**" Doc. 66, att. 2, p. 5 (emphasis added). Furthermore, Conrad agrees "to defend and indemnify [MHL] whether the suit or claims are occasioned, brought about, or caused in whole or in part by . . . any defect in the property or unseaworthiness of any vessel moored or drydocked on or adjacent to the Premises[.]" Accordingly, Conrad's own access to vessels (and potential liability arising therefrom) was also clearly contemplated under the MSA.[1] In its third-party demand, MHL alleges that Conrad "supplied materials, provided services, and/or performed work" on the vessel that impacted the vessel's degasser system, which allegedly contributed to the injuries of David Lavan in a fire on the vessel. Doc. 63, ¶ 10. Lavan has sued MHL because of this fire. Conrad's work on and/or provision of materials to MHL's vessel falls within the unambiguous meaning of Article IX's terms. MHL has therefore stated a claim for DIHH under the 2003 MSA.[2]

---

[1] Conrad relies on *Horton v. City of Chicago*, 2018 WL 6505398, at *7–*8 (N.D. Ill. Dec. 11, 2018), in which the court relied on the recitals to determine the duration and scope of an indemnification provision. In that matter, however, the indemnification provision applied only to "services contemplated by the Service Agreement" and so some search in terms of the Agreement's scope was required. Here Article IX contains no such limitation.

[2] In its reply Conrad offers:
> If the 2003 MSA does somehow apply, Conrad has alternatively asserted its own redundant contractual DIHH claims against MHL under Art. IX because the underlying incident during dredge operations "ar[o]se out of, [was] incident to, ar[o]se in connection with, or result[ed] from the

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 66] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 26th day of June, 2024.

                **JAMES D. CAIN, JR.**
      **UNITED STATES DISTRICT JUDGE**

---

activities of, work performed by, services rendered by, or materials furnished by" MHL and its dredge crew. See R. Doc. 65, ¶¶21-27. These claims would cancel out any DIHH obligations Conrad theoretically might owe to MHL under the 2003 MSA. Equally important, Conrad has alternative claims for additional insurance from MHL's underwriters. If allowed to proceed, MHL's contractual DIHH claims would further needlessly complicate and delay this already four-year-old litigation (to which Conrad has only recently been added), particularly given that the primary MHL management contact (and important first-hand witness on contractual issues) for the MIKE HOOKS job unfortunately passed away several years ago.

Doc. 70, p. 6, n. 12. As Conrad appears to understand, the potential for these two obligations to cancel each other out does not doom MHL's claim on a 12(b)(6) motion and so the arguments are not addressed here.